# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

LARRY D, WILLS

      Plaintiff,

vs.

JAMES B. NUTTER & COMPANY

CHAMPION MORTGAGE REVERSE MORTGAGE

SERVICING DEPARTMENT,

NATIONSTAR MORTGAGE

NATIONSTAR MORTGAGE HOLDINGS

FORTRESS INVESTMENT GROUP LLC

CHAMPION MORTGAGE COMPANY INC

NATIONSTAR MORTGAGE, LLC, d/b/a CHAMPION

MORTGAGE COMPANY et al.,

SOUTHLAW

      Defendant

Case No.:

**4:17-CV-00509**

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT

## CIVIL COMPLAINT, SUIT IN EQUITY

The Plaintiff is filing this action as a Pro se litigant and respectfully requests that this complaint will be decided on its content, meaning, and merit, and not on its form. The Plaintiff hereby invokes the powers and protections thereof, especially where they speak to the fact that Pro Se and in Propria Persona (Pro Per) litigants shall not be held to the same strict pleading standards as Bar-authorized attorneys, and that they have the right to submit evidence of their claims to the courts for adjudication, and that where the courts dismiss said claims, the courts must provide curative instructions as to how to repair the paper work and give leave or permission and adequate time to re-file.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT

PAGE **1** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Therefore, Plaintiff hereby claims the substantial Due Process right to have Findings of Fact and Conclusions of Law published with any order of this Court. Plaintiff complains and for causes of action alleges as follows:

## 1. INTRODUCTION

Plaintiff, LARRY D WILLS brings this suit in equity for deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States.

Many older consumers and their families are confused and frustrated by the terms and conditions of reverse mortgages according to complaints submitted to the Consumer Financial Protection Bureau (CFPB). Reverse mortgages are a special type of loan that allows homeowners, 62 and older, to borrow against the accrued equity in their homes.

Reverse mortgages differ from other types of home loans in a few important ways. First, unlike traditional "forward" mortgages, reverse mortgages do not require borrower(s) to make monthly mortgage payments (though they must continue paying property taxes and homeowners' insurance). Prospective reverse mortgage borrowers are required to undergo mandatory housing counseling before they sign for the loan.

1. The loan proceeds are generally provided to the borrowers as lump-sum payouts, annuity-like monthly payments, or as lines of credit.

2. The HECM program was originally authorized by the Housing and Community Development Act of 1987, Pub. L. No. 100-242, 101 Stat. 1815 (1988); 12 U.S.C. § 1715z-20. Under the program, the United States Government insures reverse mortgages originated by private lenders.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **2** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

3. A reverse mortgage is a loan that allows older homeowners to convert part of the equity in their homes into cash. It is the "reverse" of a traditional mortgage, in which the borrower repays the borrowed sum on a monthly basis: reverse mortgage borrowers receive money in exchange for their home equity. Borrowers can choose to receive the loan proceeds in a lump sum, on a monthly basis, or they can draw on a line of credit periodically as needed. Reverse mortgage borrowers are not required to make monthly or other periodic payments to repay the loan. Instead, the loan balance increases over time, and the loan does not become due and payable until one of a number of defined events occurs. 12 U.S.C. § 1715z-20(j).

4. The HECM program was first created as a pilot program that was permitted to insure up to 2,500 reverse mortgages. Since then, Congress has made the program permanent and has greatly expanded it. From the program's inception through September 2012, HUD has insured more than 770,000 HECMs. Of these, over 595,000 HECMs are still outstanding.

5. Recognizing the complex nature of the reverse mortgage product, the HECM statute has always required specific disclosures about the rights, limited liability, costs and other terms of the mortgage, and has required that homeowners receive counseling before taking out a loan that HUD would insure under the program. 12 U.S.C. § 1715z-20(e) & (f). Throughout the history of the HECM program, HUD has not provided this counseling directly, but has approved private organizations to provide it. While HUD has recommended that non-borrowing spouses also receive counseling, it

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

did not require such counseling until 2011.

6. HUD does not originate HECMs. They are originated by private lenders, who generally sell them into the secondary market.

7. In addition to the HECM statute and regulations, all HECM transactions are governed by a first Note and Mortgage between the lender and borrower, a second Note and Mortgage entered into between HUD and the borrower, a Home Equity Conversion Loan Agreement entered into by the lender, the borrower, and HUD, and the insurance contract between HUD and the lender.

8. HUD's regulations at 24 C.F.R. § 206.1 through 206.211 are the insurance contract between HUD and lenders. No written binder or separate document sets forth the terms of the HECM insurance. Instead, the "contract of insurance" is defined as "the agreement evidenced by the issuance of a Mortgage Insurance Certificate or by the endorsement of the Commissioner upon the credit instrument given in connection with an insured mortgage, incorporating by reference the regulations in this subpart and the applicable provisions of the Act." 24 C.F.R. § 203.251 (j). Borrowers and their heirs are third-party beneficiaries of the FHA insurance contract.

9. Any lender intending to participate in the HECM program for a particular loan must extend the loan in compliance with the HECM statute and HUD's regulations. If approved, HUD issues an insurance certificate for the loan. Mortgage insurance premiums are paid by the borrower from the equity in the home. An initial mortgage insurance premium is paid from the funds at closing, and ongoing monthly premiums

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **4** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Case 4:17-cv-00509-ODS    Document 4    Filed 06/26/17    Page 4 of 46

are added to the balance of the loan securing the homeowner's residence at the rate of 0.5% per annum of the loan balance, compounded monthly.

10. HECM insurance provides a number of benefits to the homeowners, whose home equity funds the premiums. It provides protections for homeowners if the lender defaults on its obligations under the mortgage, see 24 C.F.R. §§ 206.117, 206.121, and ensures that neither borrowers nor their heirs will ever have to pay more than the value of the property to satisfy the loan. 24 C.F.R. §§ 206.123(b); 206.125(c).

11. HUD's issuance of an insurance certificate for a particular loan "shall be conclusive evidence of the eligibility of the loan or mortgage for insurance." 12 U.S.C. § 1709(e).

12. HUD regulations permit lenders to file an FHA insurance claim if the mortgage is assigned to HUD, the lender forecloses on the property, or the borrower sells the property for less than the mortgage balance. 24 C.F.R. § 206.123. See also 24 C.F.R. §§ 206.127, .129.

13. Since the beginning of the program, HUD has accepted assignment of over 30,000 mortgages. These mortgages are serviced by a HUD contractor, DEVAL LLC.

14. The statute states that the obligation of the homeowner (including the non-borrowing spouse) to satisfy the mortgage must be deferred until the homeowner's death, sale of the home, or other events to be determined by HUD. 12 U.S.C. § 1715z-20(j). HUD's regulations.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **5** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Case 4:17-cv-00509-ODS    Document 4    Filed 06/26/17    Page 5 of 46

## 2. JURISDICTION

This court has jurisdiction pursuant to the following statutes:

a.    28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

b.    28 U.S.C. § 1343, (3) and (4) which gives district courts original jurisdiction over actions to secure civil rights extended by the United States government;

c.    28 U.S.C. § 1367, which gives district court supplemental jurisdiction over state law claims.

d.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because the events that gave rise to this Complaint occurred in this district.

e.    that gave rise to this Complaint occurred in this district

## 3. PARTIES:

For LARRY D, WILLS, against JAMES B. NUTTER & COMPANY, CHAMPION MORTGAGE REVERSE MORTGAGE DEPARTMENT SERVICING DEPARTMENT, NATIONSTAR MORTGAGE and FORTRESS INVESTMENT GROUP, L.P. is now, and at all times herein mentioned, these entities are incorporated under the laws of the; (JAMES B. NUTTER & COMPANY) State of Missouri, (CHAMPION MORTGAGE REVERSE MORTGAGE) under the laws of the State of Michigan, (NATIONASTAR MORTGAGE) under the laws of the State of Texas, (FORTRESS INVESTMENT GROUP, L.P.) under the laws of the State of New York.

JAMES B. NUTTER & COMPANY has a location of 4153 Broadway, Kansas City Missouri

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT

PAGE **6** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Case 4:17-cv-00509-ODS    Document 4    Filed 06/26/17    Page 6 of 46

64111, CHAMPION MORTGAGE REVERSE MORTGAGE has a location of P.O. Box 40724, Lansing MI 48901-7924 also known as CHAMPION MORTGAGE COMPANY INC headquartered at 20 Waterview Blvd Parsippany, NJ 07054. NATIONSTAR MORTGAGE, PO Box 619098 Dallas, TX 75261-9741also known as NATIONSTAR MORTGAGE HOLDINGS INC headquartered at 8950 Cypress Waters Blvd Coppell, TX, 75019. FORTRESS INVESTMENT GROUP LLC headquartered at 1345 Ave of the Americas 26, New York, NY 10105. SOUTHLAW has a location of 13160 Foster, Suite 100 Overland Park, KS 66213-2660 Defendants may be served with process of this Court upon any officer of the corporation by mailing a copy of the summons and complaint to the principal places of business.

Plaintiff is now and at all times herein mentioned as the owner and/or entitled to possession of the property located at 3719 College, Kansas City, and Missouri 64128 with the legal description of:

**3719 COLLEGE / N 21 FT LOT 27 S 12 FT LOT 28 BLK 1 MARYLAND**

**4. FACTS CONSTITUTING CAUSE OF ACTION**

I the Plaintiff in this civil action before the court; alleges that NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE along with other conspirators (for which I will identify in this pleading) sought to deprive ME of my lawful title rights to the said property in question 3719 College Avenue, Kansas City MO, 64128 with the legal description of:

**3719 COLLEGE / N 21 FT LOT 27 S 12 FT LOT 28 BLK 1 MARYLAND**

By and thru a wrongful foreclosure action, facilitated by The Southlaw Firm of Overland Park KS. A wrongful foreclosure done without the proper documentation, a breach of fiduciary

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE 7 OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

duties contract, Fraud/False business practices, Predatory lending practices, Deceptive Business Practices...I the Plaintiff intends to prove these allegations.

On or about January 14, of 2014, in the city of Kansas City, State of Missouri, Jackson County, I the Plaintiff, acting as Power of Attorney for LELA M, WILLS did enter into a Reverse Mortgage Promissory Note establishing a Deed of Trust in favor of NATIONSTAR MORTAGE LLC d/b/a CHAMPION MORTAGE on the property located at 3719 College Ave, Kansas City MO 64128 with a legal address of:

### 3719 COLLEGE / N 21 FT LOT 27 S 12 FT LOT 28 BLK 1 MARYLAND

Let the court see per the attachments that the Deed of Trust filed with the Jackson County Recorders of Deeds Office was for an amount of ($34,000.00), the amounts dispersed in two separate dispersements were less than ($8,105.85). On March 16th of 2015 the primary borrower LELA M WILLS passed way at 6:25pm at Research Hospital in their Hospice Wing. She died without a will, and I am the only living heir to her estate (an only child) that at the time of her death was less that ($40,000.00). The week of her passing I notified Champion Mortgage through their customer service department; I was informed that without the death certificate, my mother could not be reported deceased, and was given instructions that once I received the Death Certificate to fax or email Champion Mortgage a copy.

My Mother was buried on the 8th of April, 2015 at Brookings Cemetery, one month later I received the Death Certificate for the State Department of Vital Statistics at which time I emailed a copy to CHAMPION MORTGAGE. I also informed CHAMPION MORTGAGE what my intentions were with concerns to the property; I was instructed to send in a Letter of Intent.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **8** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

As instructed I send in a Letter of Intent, in a phone call a couple of days later I was told the Letter of Intent was rejected, the customer service rep did not tell me why it reject, so rephrased the letter and emailed it to CHAMPION MORTGAGE again. When calling the receipt of thye letter, I was informed that the letter was rejected again. I questioned the customer service rep and was told that they would check into the matter and call me back.

I received a call back on an unknown number, when I answered the call; the lady told that she was a representative in customer service for CHAMPION MORTGAGE and she was calling me from her cell phone. She proceeded to tell me that I needed a pre-approval letter to go along with the (LOI), I informed her that I didn't know that, and I asked her why are you calling me from a cell phone. What she told me was very disturbing, "she said that they were not supposed to tell a borrower about that". I ask why and she said that was their instructions. I did not record this conversation; neither do I have the same phone from a cell phone. What she told me was very disturbing, "she said that they were not supposed to tell a borrower about that". I ask why and she said that was their instructions. I did not record this conversation; neither do I have the same phone.

This goes to show the length at deceptive practices and misleading statements, the employees are ready to make on instructions from NATIONSTAR MORTGAGE'S management.

This is an account of, employee giving an account of some of the deceptive practices used by NATIONSTAR MORTGAGE d/b/a CHAMPION MORTGAGE; I am a former employee of Nationstar Mortgage.

*I resigned of my own will and was not fired. Therefore, I'm not harboring any grudge against*

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT

PAGE **9** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

anybody. But, I do want to warn everyone out there that this company has continued to practice

in appropriate lending standards even after the mortgage bust when Fannie Mae collapsed. I

was even as late as October of 2009 encouraged to manipulate income documents to qualify

customers and to pressure customers to refinance even if there was no benefit. I was also

encouraged to redistribute fees so that the company could report a profit while they were

actually taking a loss in funds. There are some honest hard working people at Nationstar

Mortgage, but the people putting the pressure on branch managers and loan officers are

knowingly committing mortgage fraud. Fishing for credit reports, manipulating income, finding

ways to avoid liens on titles, these are just some of the ways managers are encouraged to help

their loan officers make the sale. And if you are a customer of Nationstar Mortgage, I encourage

you to keep a close eye on your credit report if one of their loan officers calls you. I can't tell you

how many times we were encouraged go ahead and pull reports if we didn't have the customer's

full consent to complete an application for a refinance and those reports do count against your

credit report and you will have to give an account for them if you apply for a loan anywhere.

This is from an independent contractor associated with NATIONSTAR MORTGAGTE; I was

with a title insurance co., 7 yrs. Licensed R/E Agent in Va. 25 yrs. Managed the largest Ind.

Loan Co. in Va. for over 20 yrs. Have bought and sold many homes, and never encountered what

I went through with Nationstar.. They must be stopped.

This is a DISSATISFIED customer; I cannot comprehend how this company is allowed to

continue mishandling the most valuable possession in any person's life. Are we so intimidated by

their superior attitudes, their stone-walling, threats and LIES that we assume there is no

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

recourse? After 19 years of marriage, 18 years as a parent, 10 years as a successful business owner I am no longer afraid of anything. I have been taking careful notes, with names, watching for current mortgage news and I have to believe our voices do count in this, our America, our world. I'm in Texas and I will be walking through their doors next week demanding to see everything! Which probably won't be much because I have discovered our records make NO NOTE of 90 minute conversations, NO NOTE of hard fought payment plans, NOTHING!

I will not be brushed aside, I will not be talked down to, I will not sit idle and be ignored. I rammed through our Modification Loan by sheer force of will. And I will tell our story at every given opportunity because it is a numbers game. Eventually, someone somewhere will share the appropriate course of action to rid my family of these incompetents! They are street thugs and should be treated as such. And I WILL see them mortally penalized for their incompetency. The final result will be the passage of LAWS insuring the public's protection. It will be a long and hard road but I will walk it. Our nightmare is ongoing and I thank my Lord I have the time on my hands to deal with this problem. Happy Thanksgiving and best wishes for a DELIGHTFUL Holiday Season!

Jessalu Wright

**6.  42 U.S. Code § 1985 – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS:**

(3) Depriving persons of rights or privileges: If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **11** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

*or hindering the constituted authorities of any State or Territory from giving or securing to all*

*persons within such State or Territory the equal protection of the laws; or if two or more persons*

*conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote,*

*from giving his support or advocacy in a legal manner, toward or in favor of the election of any*

*lawfully qualified person as an elector for President or Vice President, or as a Member of*

*Congress of the United States; or to injure any citizen in person or property on account of such*

*support or advocacy; in any case of conspiracy set forth in this section, if one or more persons*

*engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy,*

*whereby another is injured in his person or property, or deprived of having and exercising any*

*right or privilege of a citizen of the United States, the party so injured or deprived may have an*

*action for the recovery of damages occasioned by such injury or deprivation, against any one or*

*more of the conspirators.*

The Plaintiff in this case before this Honorable court alleges that Nationstar Mortgage d/b/a Champion Mortgage violated the prime borrower's civil rights. By the nature of the Reverse mortgage it is predatory and targets the elderly who have less than adequate holdings for the maturity of their retirement life.

This is a significant factor within low income areas such as the case at bar. African American homeowners who are above the age of 62 and do not have adequate retirement resources are often the targets of reverse mortgage companies. Theses borrowers are often on extremely limited income (fixed) and in-conjunction with rising utility cost, property taxes, and property maintenance. Not to mention the advent of a debilitating illness or condition such as Dementia.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **12** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

or Alzheimer's that requires a caregiver that is often a family member. Can give rise to foreclosure or forfeiture of real property.

These factors result in a condition that allows reverse mortgage companies to target these areas in an effectual land grab. Not understanding the eventual pitfalls of a reverse mortgage through the lack of disclosure by the mortgage brokers originating the loan or the customer service departments of the various reverse mortgage providers, which is tantamount to a conspiracy to deprive American Citizens the elderly and African Americans of their property and violating they're civil rights.

In a recent case filed against Morgan Stanley, American Civil Liberties Union This suit alleges that Morgan Stanley violated the Fair Housing Act by discriminating on the basis of race in the secondary mortgage market. Specifically, Morgan Stanley is liable under Title VIII of the Civil Rights Act by purchasing, pooling, and selling securitized mortgages in predominantly nonwhite neighborhoods. To be clear, this lawsuit is not alleging that Morgan Stanley or its employees held racial hostility to the black community, but that the policies and practices of the investment bank had a manifest racial impact in clear violation of the 1988 amendments to the Fair Housing Act.

Subprime loans were five times more likely in African American neighborhoods than in white neighborhoods. Subprime lenders targeted these communities – a process known as reversered lining–in order to satisfy the voracious investor demand for subprime securities. Because low income, minority areas were historically excluded from the traditional lending markets through redlining, subprime lenders were able to saturate these communities with

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **13** OF **54**
Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

subprime loans, which were securitized and sold to investors. Morgan Stanley did not make these loans to homeowners themselves. Instead, they pushed the originating banks to make loans that were defective in violation of sound underwriting practices. They often knew, or should have known, that many these loans would fail.

Minority borrowers were more willing to agree to the terms of such loans on account of the inadequate access to prime loans or traditional financing options. Consequently, lenders steered African American borrowers with prime credit to take out subprime loans through both intentional discrimination and discriminatory impact created by their policies. These borrowers paid more for loans that often featured balloon payments and adjustment rates. Consequently, they were more likely to default.

The damages for these practices, which are not limited to Morgan Stanley, may be in the billions. If successful, this suit will be the first of several. But it also might inspire the government to take meaningful action to protect homeowners and others from a financial system that is sometimes out of control. Part of the importance of this case lies in the fact that all of the government's attempts to litigate the harms of the subprime crisis have typically been rooted in fraud, including the government's recent lawsuit against Wells Fargo. This is the first major suit that alleges Civil Rights violations, which is, in some sense, a much clearer case. The regulations under the Amendments to Title VIII clearly specify that "pooling or packaging" loans on the basis of race is a violation of Title VIII (42 C.F.R. § 100.125). Since disparate impact claims are recognized under Title VIII, not just disparate treatment, a statistical showing of a racial impact provides the foundational proof of a Title VIII violation.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **14** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Too often today we conceptualize civil rights law narrowly. We tend to be backward looking, defensive and ambivalent about the role of courts. Some of us even believe that civil rights have become overly court centric. This myopic view has diminished both the practice of civil rights and our training of the next generation of civil rights attorneys to think creatively and innovatively about the future of civil rights litigation. In the late 1980s and early 1990s, educational equity suits had run their course in federal courts, but a few innovative lawyers developed the legal theory of educational adequacy that was used in cases like *Leandro v. North Carolina*. While legislative change is critical and the law may be too narrow, we must not forget the important role that courts can play in both protecting civil rights and generating meaningful societal change.

**42 U.S. Code § 1982 Property rights of citizens; All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.** In this case before the court Nationstar Mortgage d/b/a Champion Mortgage is accused per this statue of depriving the borrower and the heir to the property who acted in fiduciary for the borrower as Power of Attorney of their property rights by failing to disclose pertinent information that would have change the outcome, resulting in the borrower not closing the Reverse Mortgage. Other information withheld was the possibility of a grace period to be afforded to a non-borrowing spouse or the surviving heir (child) of the borrower at the time of the borrower's death.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **15** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

### 7. 42 U.S.C.S., 1983.

*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities ...*

In Missouri, the tort of wrongful foreclosure requires: (1) a legally owed duty to the Plaintiff by the foreclosing party (2) a breach of that duty (3) a causal breach of that duty and the injury the Plaintiff sustained, and (4) damages. Missouri courts have further clarified this cause of action by stating: "We are inclined however, to believe that with respect to real property the Murphy case was articulating a rule that has been applied in other jurisdictions. That rule is that a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust. Munger v. Moore, 11 Cal. App. 3d 1, 7, 89 Cal. Rptr. 323, 326 (Cal. Ct. App.1970)

The court in Munger appears to be saying that if the foreclosure was illegal, fraudulent willfully oppressive then that foreclosure was wrongful and the party foreclosed on may be entitled to damages. According to California statutory and case law several types of damages are available to victims of wrongful foreclosures.

First, damages are measured by the value of the property at the time of the sale in excess of the mortgage lien against the property (i.e the equity in the property). Second, damages are available in the amount that is sufficient to compensate for all detriment proximately caused by

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

the wrongful conduct. Third, the borrower may be able to obtain damages for emotional distress in a wrongful foreclosure action and if the borrower can prove by clear and convincing evidence that the servicer/trustee was guilty of fraud, oppression or malice punitive damages may be awarded. Where there is a wrongful foreclosure, the borrower may seek punitive damages. In Kachlon v. Markowitz (2008) 168 Cal.App.4th 316, 345 [85 Cal.Rptr.3d 532, 554] the Court in acknowledging the right to seek punitive damages said:

"The jury concluded that the non-judicial foreclosures instituted by the Kachlons were wrongful, and that in pursuing the foreclosure proceedings Mordechai acted "intentionally, fraudulently and in conscious and callous disregard for the rights of the Markowitzes." These findings are tantamount to the finding of malice…." (emphasis added). As such, it is clear in California, if the borrower can prove by clear and convincing evidence that the servicer or trustee was guilty of fraud, oppression or malice in its wrongful conduct, punitive damages may be awarded

In 2005, Judge Rowe and his wife purchased property in South Carolina. Before doing so, they entered into an adjustable rate note with TM Capital Inc. for $626,250. At some point later, Aurora became the loan holder and transferred the loan and the right to collect payments to Nationstar in 2012. In March 2012, Nationstar allegedly informed the Rowes that the rate had changed, from the agreed upon 4.625 percent to 6.625 percent. In May 2012, the Rowes sent a letter to Nationstar requesting an audit and a recalculation of the interest rate since 2010. In June 2012, Nationstar sent the Rowes a notice of default.

Judge Rowe and his wife responded by filing a lawsuit, noting that under the federal Truth in

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Lending Act (TILA), lenders who regularly extend consumer credit with a finance charge must disclose certain key loan terms. Since Nationstar allegedly failed to do so, the Rowes had the right to rescind their mortgage loan, which they did in their May 2012 letter. Although the Rowes repeatedly tried to bring the issue to Nationstar's attention, Nationstar never responded. The Rowes seek a permanent injunction, preventing Aurora or Nationstar from exercising remedies under the deed of trust (including, presumably, foreclosure).

You do not need to be poor or have little education to be the victim of predatory lending — sometimes you can even be a circuit court judge. Such may be the case with Greenbrier County Circuit Judge James Rowe, who is suing Aurora Commercial Corp. (formerly Aurora Loan Services, Inc.) and Nationstar Mortgage, LLC for predatory lending practices

There are many instances where consumers have launched suits, and class action suits against Nationstar Mortgage for deceptive business practices otherwise Predatory lending practices, here is an account of one such complaint; *Nationstar is by far the most lawless company servicing loans out there today!!! They have me in foreclosure with US Bank, whom they illegally placed in my county documents le and removed any trace of Bank of New York Mellon, they don't realize that I have a certified copy from the county as proof of their once existence in my file, any letters from them stating Bank of New York Mellon was the "owner" of my loan, yet I also have a letter from them stating they DO NOT OWN my loan and as a trustee have no legal right to modify or dispose of my home!!! Yet Nationstar blamed my loan modification denial on Bank of New York, stating that "they did not wish to participate in doing loan modifications" So they lied, , in writing, and they have no right to modify anyone's loan as they have no ownership of*

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **18** OF 54

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Case 4:17-cv-00509-ODS    Document 4    Filed 06/26/17    Page 18 of 46

your loan. If your loan is securitized (look at county docs for a certificate number to be sure) then Nationstar lost possession of your note, or never had it in the first place and since they are debt collectors, they must be collecting your payments on behalf of an owner of which there is no longer one that exists. So if you have a loan serviced by Nationstar and your county documents show that it is a securitized loan, I would never pay them another cent and you need to sue them for RICO, FDCPA and a slew of other violations for collecting on unsecured debt. The fact that your loan was securitized means the note and mortgage have been separated and lost forever.

Nationstar mortgage's deceptive lending practices, loan modifications, and customer service scams can be seen all over the internet, I am just one of many who personally suffered, and am losing my home due to the "loan modification" scam, adding unnecessary insurance, late fees, other fees that just appear, and no one can tell you what they are for. I could write a book about all they have done, including, when they were trying to call me, called my friend (who I guess I listed on my mortgage application) to try to get a hold of me, but then told my friend I needed to call her (the customer service agent) back because she wanted to offer me a job, acting like she was calling for a job reference. Also, after doing a loan modification, a month later getting a renewed bill amount 2 times higher than what we had agreed on for the "modified amount", because they decided to escrow our taxes, which we had been paying through the county. And, telling me, after calling the: hope now" program, and they referred me back to Nationstar, nationstar told me they "were not participating in this program".

As one can see from these two complaints that I am showing and this is just a sample, and there are many more. All making similar claims that result in allegations of predatory

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **19** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Case 4:17-cv-00509-ODS    Document 4    Filed 06/26/17    Page 19 of 46

lending practices.

## 8. 29 U.S. Code § 1109 LIABILITY FOR BREACH OF FIDUCIARY DUTY

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title (/uscode/text/29/1111).

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

A fiduciary relationship encompasses the idea of faith and confidence and is generally established only when the confidence given by one person is actually accepted by the other person. Mere respect for another individual's judgment or general trust in his or her character is ordinarily insufficient for the creation of a fiduciary relationship. The duties of a fiduciary include loyalty and reasonable care of the assets within custody. All of the fiduciary's actions are performed for the advantage of the beneficiary.

Courts have neither defined the particular circumstances of fiduciary relationships nor set any limitations on circumstances from which such an alliance may arise. Certain relationships are, however, universally regarded as fiduciary. The term embraces legal relationships such as those

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **20** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Case 4:17-cv-00509-ODS   Document 4   Filed 06/26/17   Page 20 of 46

between attorney and client, Broker and principal, principal and agent, trustee and beneficiary, and executors or administrators and the heirs of a decedent's estate.

A fiduciary relationship extends to every possible case in which one side places confidence in the other and such confidence is accepted; this causes dependence by the one individual and influence by the other.

The courts stringently examine transactions between people involved in fiduciary relationships toward one another. Particular scrutiny is placed upon any transaction by which a dominant individual obtains any advantage or profit at the expense of the party under his or her influence. Such transaction, in which Undue Influence of the fiduciary can be established, is void.

In this case a fiduciary relationship can be established, since the Plaintiff had no experience with reverse mortgage. The Plaintiff depended on the expertize of the broker who worked for a very reputable company that has a long history of good service to the community at large being Kansas City Mo.

As to the Plaintiff's understanding of the due and payable clause that is standard in any purchase money mortgage, home line of credit or a pure refinance. Which under normal circumstances can be clearly understood, when there is a material breach for non-payment, the foreclosure process is initiated and unless there are corrective measures taken by the borrower to cure the breach the foreclosure take place.

With limited resources and no sizable work history for the past five years, the ability to obtain a mortgage was severely hindered. In the absence of pertinent information such as, there would be no grace period and at the time of the primary borrower's death, and the note would be

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

due and payable. This information this would have prompted the Plaintiff acting as Power of Attorney for the primary borrower not to complete the reverse mortgage transaction. The fiduciary role of the broker was broken.

The reverse mortgage statute includes a section titled "Safeguard to prevent displacement of homeowner." This provision states that Defendant "may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary." 12 U.S.C. § 1715z-20(j). The provision further states that "[f]or purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner," so the death of a spouse – **even one who is not named on the HECM – does not trigger the obligation to pay off the mortgage. Id**.

The legislative history on the passage of the HECM legislation confirms the plain meaning of this statutory provision. The Senate Report on the legislation states that HECM mortgages shall "defer any repayment obligation until death of the homeowner and the homeowner's spouse.

In this case a non-borrowing party that is not a spouse, but a child (son)/ primary care giver that also lived in the residence, and the residence was the primary address of the caregiver as well. The caregiver being the son of the Primary borrower and the direct heir of the borrower's estate. The Plaintiff in this case states without pause that under these circumstances, the same privileges granted to the non-borrowing spouse should and must be afforded to a child who meets a certain criteria.

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

1. The heir/child was the primary caregiver to the HECM mortgagor at the time of origination and remained the primary caregiver throughout the HECM mortgagor's life;

2. The heir/child has title to the property or a legal right to remain in the property; and the property address is the primary residence of the heir/child.

3. There are no allegations or claims that would invalidate the HECM or any such allegations or claims have been judicially resolved in favor of the Mortgagee.

4. The heir/child must provide proof that he or she was the primary caregiver to the deceased borrower at the time of the origination of the HECM and must have remained the primary caregiver until the death of the borrower, and;

5. The heir/child must have an ownership, leasehold, or other legal right to remain in the property, must physically reside at the property, must have resided there when the loan was originated, and must continue to reside, uninterrupted, at the property for the balance of his or her natural life.

The five potential "equitable" remedies were requesting that the mortgagees forego foreclosure, accepting assignment of the mortgages, consenting to allowing the non-borrowing spouse to assume the mortgage; and consenting to the mortgagees paying the non-borrowing spouse to provide a deed in lieu of foreclosure.

## 9. FRAUD

This case involves allegations that Defendant Nationstar Mortgage, LLC ("Nationstar")d/b/a CHAMPION MORTGAGE improperly imposed fees in connection with mortgage loans it owned and/or serviced – including property inspection fees, property preservation fees, property appraisal fees, property taxes and attorney's fees – first by placing or maintaining the loans in some form of default status and then, using the default status as a pretext,

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE 23 OF 54

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

assessing the unauthorized fees which resulted in windfall profits at its borrowers' expense. General familiarity with the factual background and procedural history of this case is assumed.

Nationstar and its affiliate, Solutionstar, use an automated default servicing platform to illegally, unfairly, fraudulently and repeatedly charge defaulted loan borrowers multiple "property inspections" that are not required by lenders, not permitted by lender guidelines and often violate state and federal regulations.

The defendants charge these illegal property inspections in an effort to create as many defaulted loans as possible, as a loan servicer's interest in a defaulted loan is greater than the actual mortgage note, owner's interest.

In a published case the plaintiffs and others in the class are seeking compensatory and exemplary damages, injunctive relief, restitution, interests, attorney fees and costs. They are represented by attorneys Dean Kawamoto, Derek Loeser, and Gretchen Obrist of Keller Rohrback in Seattle, and by attorney Thomas Eric Loeser of Hagens Berman Sobol Shapiro in Seattle. U.S. District Court for the *Eastern District of California Sacramento Division Case number 2:16-CV-00302-MCE-EFB.*

In a similar case: *Victory in California, as we have predicted for years. Maria L. Hutkin and Jude J Basile were the attorneys for the homeowners and obviously did a fine job of exposing the truth. Their tenacity and perseverance paid off big time for their clients and themselves. They showed it is not over until the truth comes out. So for all of you who are saying you can't find a lawyer who "gets it" here are two lawyers that got it and won. And for all those who were screwed by the banks, it isn't over. Now it is your turn to get the rights and damages*

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **24** OF **54**

Larry D. Wills
3719 College Ave
Kansas City, MO 64128
Telephone: 816-882-7664

Case 4:17-cv-00509-ODS    Document 4    Filed 06/26/17    Page 24 of 46

you deserve.

The homeowners won flat out at a trial — something that should have happened in most of the 6.6 million Foreclosures conducted thus far. U.S. Bank showed its ugly head again as the alleged Trustee of a trust that was most probably nonexistent, unfunded and without any assets at all much less the homeowners alleged loan. Still the settlement shows how far Wall Street will go to pay damages rather than admit their liability to investors, insurers, counterparties in credit default swaps, and the Federal Reserve.

When you think of the hundreds of millions of wrongful foreclosures that were the subject of tens of billions of dollars in "settlements" that preserved homeowners rights to pursue further damages and do the math, it is obvious why even the total of all the "settlements" and fines were a tiny fraction of the total liability owed to pension funds and other investors, insurers, CDS parties, the Federal Government and of course the borrowers who never received a single loan from the banks in the first place. If 5 million foreclosures were wrongful, as is widely suspected at a minimum, using this case and some others I know about the damages could well exceed $5 Trillion. Simple math. Maybe that will wake up the good trial lawyers who think there is no case!

A fitting announcement on the 5th anniversary of the Lehman Brothers collapse. The economy is still struggling as more than 15 million American PEOPLE were displaced, lost equity and forced into bankruptcy by imperfect mortgages that were a sham, and thus imperfect foreclosures that were also a sham. Another 15 million PEOPLE will be displaced if these wrongful, illegal and morally corrupt sham foreclosures are allowed to continue.

In another case: *Wells Fargo Quiet Title, Wrongful Foreclosure, Punitive Damages Lawsuit*

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **25** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

*DAVID and CRYSTAL HOLM V. Wells Fargo Results in $2,959,123.00 in financial damages to homeowners and Quite Title to their property. Based upon the record, the Court finds this sum to be fair and reasonable and supported by the evidence adduced at trial. IT IS FURTHER ORDERED ADJUDGED AND DECREED that judgment is entered for punitive damages in favor of Plaintiffs David and Crystal Holm, husband and wife, and against Defendant Wells Fargo Home Mortgage, Inc. in the amount of TWO MILLION, NINE HUNDRED FIFTY NINE THOUSAND, ONE HUNDRED TWENTY THREE DOLLARS ($2,959,123.00).*

Every state in the country has a judicial foreclosure statute that spells out the procedures necessary for the mortgagee, typically the lender, to realize in a civil lawsuit against the collateral pledged to secure repayment of the loan. Generally, the Uniform Commercial Code (UCC) applies to the acceleration and collection of promissory notes (a precondition to foreclosure) and the loan agreement and mortgage ("Deed of Trust"). The UCC also provides more specific terms and conditions to be followed, while the court rules define the judicial procedures.

In a case illustrated here the attorneys for the foreclosing mortgage company tried to explain to the, "Judge, you just don't understand how things work," argument reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process. Typically, the homeowner who finds himself/herself in financial straits, fails to make the required mortgage payments and faces a foreclosure suit, is not interested in testing state or federal jurisdictional requirements, either pro se or through counsel. Their focus is either, "how do I save my home," or "if I have to give it up, I'll simply leave and

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **26** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

find somewhere else to live."

In the meantime, the financial institutions or successors/assignees rush to foreclose, obtain a default judgment and then sit on the deed, avoiding responsibility for maintaining the property while reaping the financial benefits of interest running on a judgment. The financial institutions know the law charges the one with title (still the homeowner) with maintaining the property.

There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There is nothing improper or wrong with financial institutions or law firms making a profit-to the contrary, they should be rewarded for sound business and legal practices. However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through. Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing and jurisdictional burdens. The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

The Court will illustrate in simple terms its decision: "Fluidity of the market"---"X" dollars, "contractual arrangements between institutions and counsel"---"X" dollars, "purchasing mortgages in bulk and securitizing"---"X" dollars, "rush to file, slow to record after judgment"---

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

"X" dollars, "the jurisdictional integrity of United States District Court"---"Priceless."

**10. The Uniform Commercial Code (UCC)** law requires:

(Article 3 of the Uniform Commercial Code could not be clearer when it comes to the issue of mortgage note foreclosure. When someone signs a promissory note as its maker ("issuer"), he/she automatically incurs the obligation in UCC §3-412 that the instrument will be paid to a "person entitled to enforce" the note. "Person entitled to enforce"—hereinafter abbreviated to "PETE"—is in turn defined in §3-301:

*"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d) . . . .*

*Essentially a "holder" is someone who possesses a negotiable instrument payable to his/her order or properly negotiated to the later taker by a proper chain of indorsements. This result is reached by the definition of "holder" in §1-201(b)(21): (21) "Holder" means:*

*(A) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession . . . .and by §3-203:*

*(a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.*

*(b) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession*

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

*alone.*

**The Uniform Commercial Code forbids foreclosure of the mortgage unless the creditor possesses the properly-negotiated original promissory note.**

*Nor will a mere copy of the note suffice. There could be 100 copies of the original note, but that would not create a right of foreclosure in 100 plaintiffs. To the bank's argument that a copy of the promissory note should be enough, ask any banker if he/she would be willing to accept a copy of check.*

There are good practical reasons for the possession requirement. If the maker of the note pays a "person not entitled to enforce," he/she is not discharged from liability on the note, and faces the prospect of having to pay the true owner when that person surfaces with proof of ownership of the note (see §§3-601 and 3-602 above). Courts must take special care not to expose the maker to such double liability.

## 11. DISCUSSION

In the case of a transaction predicated on a void instrument Missouri law is settled. "It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties."

The most frequent complaint concerning requested loan changes, however, involves consumers wishing to add additional borrowers to the loan in order to extend the term of the loan. Adult children of reverse mortgage borrowers also submit complaints describing frustration that

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT

PAGE **29** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

lenders refuse to add them to the loan as an additional borrower or allow them to "assume" the reverse mortgage loan for an aging or deceased parent. These complaints often stem from confusion about loan terms and requirements. Reverse mortgages prohibit loan assumptions since actuarial tables are used when a reverse mortgage is issued to determine how much to lend to the borrower(s); as a result loan repayment is triggered when the last borrower moves out or dies. Adult children may retain the home only by paying off the loan or by paying 95 percent of the value of the home.

Some married couples report to the CFPB that they borrowed a reverse mortgage in the name of only the older of the two spouses. Non-borrowing spouses (NBS) submit complaints distraught that they are facing foreclosure and about to lose their home after their husband or wife dies. Other non-borrowing spouses submit complaints worried about their ability to remain in their home should the older spouse die first. Consumers submit complaints saying that they were unaware that the younger non-borrowing spouse could lose the home if the older spouse dies first. Some consumers report that their loan originator falsely assured them they would be able to add the other spouse to the loan at a later date.

As in my case, I was assured by the mortgage broker that at the time of my mother's death, I would have enough time to decide, if I was going to keep the home or give it to the mortgage company. I was not informed that at the time of my mother's death that the loan would be due and payable with no grace period of any kind.

Although I am not a surviving spouse, but as circumstances would have it. Due to my mother's deteriorating health condition, that required 24 hour care, and I being the primary care

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

giver, and not having adequate resources to pay for outside caregivers to come into the home for 8 – 10 hour periods, meant that I had to dedicate my time too those times that were not covered. As with any requirement exceptions can be made for extenuating circumstances, where consideration can be given to a surviving child and especially an only child, caregiver where the child could not work, and the home is his or her primary residence, or where a deferred payment option could have applied.

Protecting spouses from displacement is an express purpose of the reverse mortgage program. When a reverse mortgage loan comes due and payable due to the death of a HECM borrower, the borrower's spouse is entitled to protection from displacement even if he or she is not a named borrower on the mortgage. And the lender is entitled to be paid funds it is owed. HUD has both the statutory power and the obligation to both protect these spouses from displacement, and to assure that lenders are paid.

In this case before the court I am not a non-borrowing spouse, but instead a non-borrowing heir that resided in the residence as the heirs primary residence, who has a legal right to remain in the residence do to the heirship of the property. So the question before the court is does the protections provided the non-borrowing spouse should be afforded to an heir that resided in the home as a primary residence and was the primary caregiver to the primary borrower.

HUD has taken steps to address false claims associated with these types of complaints. On June 18, 2014, HUD released Mortgagee Letter 2014-10 (ML 2014-10), which reminded mortgagees of the Federal Housing Administration's (FHA) requirements prohibiting misleading or deceptive advertising. ML 2014-10 further clarifies that the prohibition extends to misleading

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **31** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

or deceptive descriptions of the HECM program. See ML2014-10 (June 18, 2014),

On April 25, 2014, the U.S. Department of Housing and Urban Development (HUD) issued a mortgagee letter, effective August 4, 2014, providing, among other things, that non-borrowing spouses, meeting certain conditions, may remain in the home after the death of the borrower spouse for HECM loans originated after August 4th, 2014. The HUD change alters the calculation for loan amounts to be based on the age of the youngest spouse, regardless of borrowing status. The surviving non-borrowing spouse, however, will not have access to any remaining reverse mortgage loan proceeds (in the form of future monthly disbursements or unused credit line) after the death of the borrowing spouse. Since these program changes introduce an incentive for married couples to borrow jointly, it is likely that most HECMS originated after August 4, 2014 will be made in both spouses' names.

In addition, on January 29, 2015, HUD introduced a change affecting loans with non-borrowing spouses made before August 4, 2014. Under the latest change, servicers have the option either to (1) call the loan due and payable, or (2) assign "eligible" loans to HUD granting non-borrowing spouses a repayment deferral upon the death of a borrowing spouse. Because of the complex limitations on eligibility and the amount of servicer discretion, it is unlikely that many non-borrowing spouses with pre-August 4, 2014 HECMs will receive a deferral.

From the two preceding paragraphs, the government is trying to answer the problems of the non-borrowing spouse by making provisions within the rules of the reverse mortgage programs that will allow for a non-borrowing spouse to remain in the home. I the surviving child caregiver argue, that I be afforded the same rights as a surviving spouse under these circumstances.

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

The largest volume of complaints concern requests for changes to the terms of the loans. Most of these requests are to add additional borrowers to extend the life of a loan or for reduced interest rates in order to increase the proceeds of a loan. While most of these complaints stem from consumer confusion over loan terms and requirements, some consumers report that they were given false information at loan origination.

For millions of older Americans, especially those without sufficient retirement reserves, tapping into accrued home equity could help them achieve economic security in later life. As the likelihood increases that older Americans will use their home equity to supplement their retirement income, it is essential that the terms, conditions and servicing of reverse mortgages be fair and transparent so that consumers can make informed decisions regarding their options.

Plaintiff alleges that the Defendant's in this case are also aware that in order to claim title and perform a trustee sale the "beneficiary" must show proof that the beneficiary is the owner of the original promissory note, such foreclosures cannot proceed without the production of the original promissory note signed at closing. In accordance to The Uniform Commercial Code, the law forbids foreclosure of the mortgage unless the creditor possesses the properly-negotiated original promissory note. If this can't be done the foreclosure must stop.

In a typical foreclosure, ABC Company, the last entity the borrower was paying, simply contacts its foreclosure company to issue a Notice of Default and move forward with the foreclosure process. Everyone seems to assume that ABC Company has the ability to foreclose in the first place since that was who the borrower was paying recently and who the borrower may have received a notice that their loan was "sold" to.

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Because of these assumptions, most lenders, attorneys, and borrowers altogether skip or completely assume the negotiability requirements of UCC article 3 have been met during all previous transfers of the promissory note, and jump straight to the UCC article 9 security interests issues.

Such assumptions are akin to an airline pilot assuming his plane has fuel for flying, without ever inspecting any fuel tanks for fuel! Just like a plane cannot fly without proper fuel, a foreclosure cannot take place with proper possession and endorsement/holder rights in an underlying promissory note. Pilots do not skip fuel checks, so why are foreclosures skipping note enforceability issues? Maybe because no lives are at stake? It takes too long? It's never been an issues before? It costs too much money?

The Plaintiff in this case seeks, in essence, to "enforce the [Promissory] Note and Deed of Trust. Thus, as Defendant itself acknowledges, to proceed with this action, it must demonstrate that it is the holder of not only the deed of trust but also the promissory note. If not, it has no standing/injury in fact. See In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007) (stating that, "[t]o show standing in a foreclosure action, . . . the defendant must show that it is the holder of the note and the mortgage at the time the complaint was filed [and] . . . that the holder of the note and mortgage is harmed, usually by not having received payments on the note").

The Plaintiff believes and thereupon alleges that the Defendants claim as "beneficiary" is hereby shown to be without foundation. However, the claim of said Defendant as "beneficiary" as shown is also without any factual proof whatsoever, and said Defendant has no legal or

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **34** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

equitable right, claim, interest, or standing in the subject property.

**Count One:** is a claim Wrongful Foreclosure to NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE COMPANY that they are not in procession of the original note signed at closing. NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE COMPANY has claimed the position of beneficiary on the deed of trust assignment listed in the Jackson County Assessor's Office under file # 2014E0003840. UCC law requires the beneficiary listed on the deed of trust and its assignments to be the owner of the original promissory note. CHAMPION MORTGAGE is not the notes owner as shown in the original HOME EQUITY CONVERSION DEED OF TRUST, from JAMES B. NUTTER submitted in this case under (Exhibit A) which identifies the Promissory Note's owner as THE HOUSING AND URBAN DEVELOPMENT.

Due to a lack of assignment of deed of trust, no entity past who was named on the original deed of trust had authority to conduct ANY foreclosure against the property. The complete foreclosure is entirely VOID. The deed of trust expressly reserves the right to the Beneficiary to cause the Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold. The deed of trust further provides that the Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. Theses express provisions of the deed of trust are impossible to comply with amidst the fraud.

NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE COMPANY the foreclosing parties lacked power of sale as of the recording of the Notice of Default on October

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT

PAGE **35** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

27th, 2016. Per the deed of trust, only the lender can invoke foreclosure, and the foreclosing parties were not the lender, so the Notice of Default is void and of no force or affect. The power of sale in a non-judicial foreclosure may only be exercised when a valid notice of default has first been recorded.

Here, the Notice of Default appears to be void ab initio. Therefore, any foreclosure sale based on a void notice of default is also void. Accordingly, NATIONSTAR MORTGAGE d/b/a CHAMPION MORTGAGE lacks standing to conduct an unlawful detainer predicated on a void foreclosure sale as a direct result of noncompliance with prerequisites to engage in a foreclosure.

Castillo v. Skoba, Vice President of Aurora Loan Services, LLC 2010 WL 3986953 (N.D. Cal., November 30, 2010), the United States District Court in San Diego held (in granting an injunction to halt a foreclosure sale).

In a case decided on Oct. 10, by Judge Boyko, 53, ordered the lenders' representative to file copies of loan assignments showing that the lender was indeed the owner of the note and mortgage on each property when the foreclosure was filed. But lawyers for Deutsche Bank supplied documents showing only an intent to convey the rights in the mortgages rather than proof of ownership as of the foreclosure date.

(Saying that Deutsche Bank's arguments of legal standing fell woefully short, the judge wrote: "The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the court to stop them at the gate.")

An assignee of the mortgage who does not have the promissory note is not allowed to

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **36** OF **54**
Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

foreclose on the mortgage. Without the note, the foreclosing entity does not have "standing" to sue (and/or—a civil procedure). As United States District Judge Christopher Boyko explained throwing out a number of mortgage foreclosure cases, attempts to slide past the jurisdictional issue that arises from filing without the necessary paperwork is unacceptable:

Additionally, the Defendant or moving party must prove it is the Holder in Due Course and that Plaintiff signed the contract, note, or agreement with full knowledge of the true nature of the transaction, as required by state and federal law governing disclosure requirements.

Further, any party that asserts a claim upon Plaintiff's property must prove specifically that Plaintiff received equal value, as consideration to the contract, by demonstrating, possession of the original unaltered promissory note and under GAAP (Generally Accepted Accounting Principles) how much value was given under GAAP rules to Plaintiff, the source and the nature of the consideration (where did it come from); in order to demonstrate that no fraud occurred in the inducement and that whomever the holder in due course purports to be has a valid instrument to support a claim under any security agreement upon Plaintiff's property.

**Count Two:** is a claim against all Defendants pursuant to a Breach of Fiduciary Trust: An individual in whom another has placed the utmost trust and confidence to manage and protect property or money. The relationship wherein one person has an obligation to act for another's benefit. A fiduciary relationship encompasses the idea of faith and confidence and is generally established only when the confidence given by one person is actually accepted by the other person. Mere respect for another individual's judgment or general trust in his or her character is ordinarily insufficient for the creation of a fiduciary relationship. The duties of a fiduciary

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **37** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

include loyalty and reasonable care of the assets within custody. All of the fiduciary's actions are performed for the advantage of the beneficiary.

Courts have neither defined the particular circumstances of fiduciary relationships nor set any limitations on circumstances from which such an alliance may arise. Certain relationships are, however, universally regarded as fiduciary. The term embraces legal relationships such as those between attorney and client, Broker and principal, principal and agent, trustee and beneficiary, and executors or administrators and the heirs of a decedent's estate.

A fiduciary relationship extends to every possible case in which one side places confidence in the other and such confidence is accepted; this causes dependence by the one individual and influence by the other.

The courts stringently examine transactions between people involved in fiduciary relationships toward one another. Particular scrutiny is placed upon any transaction by which a dominant individual obtains any advantage or profit at the expense of the party under his or her influence. Such transaction, in which Undue Influence of the fiduciary can be established, is void.

In this case a fiduciary relationship can be established, since the Plaintiff had no experience with reverse mortgage. The Plaintiff depended on the expertize of the broker who worked for a very reputable company that has a long history of good service to the community at large being Kansas City Mo.

**Count Three**: is a claim against JAMES B NUTTER & COMPANY pursuant to the MMPA's false promise (a promise that is made with no intention of carrying it out and esp. that is made with intent to deceive or defraud) provision, in which Plaintiff alleges that the broker

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **38** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

made a false promise in regards to the kind of grace period that would be afforded to him in order to settle the outstanding mortgage, after the primary borrower's death.

This is a claim under the Missouri Merchandising Practices Act Violations (MMPA) against NATIONSTAR MORTGAGE d/b/a CHAMPION MORTGAGE in which Plaintiff alleges that mortgage broker with JAMES B NUTTER & COMPANY misled Plaintiff as to the terms of the reverse mortgage, and that Plaintiff, had he known the actual terms, would not have proceeded with the transaction.

Mo. Rev. Stat. § 407.020.1 (2010) provides:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice. * * * Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

(emphasis added). Each of the emphasized words quoted is defined by Mo. Rev. Stat. § 407.453 (2010). While the name of the act implies that it only applies to material goods, the MMPA broadly defines "merchandise" to include "any objects, wares, goods, commodities, intangibles, real estate or services." Id. By including "real estate or services" in the definition of "merchandise," the MMPA was given great power to effectuate justice for Missouri consumers defrauded in nearly any transaction.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **39** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

But in this case as with any reverse mortgage which is a very complicated financial transaction, you are often dealing with senior citizens who are on fixed incomes and a family member such as a son or daughter who sees to their care. Many times the caregiver shares the residence with the primary borrower and is also their primary place of residence as well. In this case this description is quite accurate, the Plaintiff in this case being the son of the primary borrower and the primary borrower's caregiver is a surviving resident.

Under the due and payable clause once a mortgage is in default it becomes due and payable.

In the case of a reverse mortgage the due and payable clause must be mitigated because of extenuating circumstances. In this case the Plaintiff was told, there would be a 12-18 month period so the family would have the opportunity to make the decision to keep the home or deed the home to the mortgage company. The Plaintiff decided to keep the home thus deciding to pay off the existing reverse mortgage. While acting in a fiduciary capacity the broker at JAMES B NUTTER & COMPANY gave the Plaintiff misleading information while acting as a representative of NATIONSTAR MORTGAGE d/b/a CHAMPION MORTGAGE, which led to the Plaintiff while acting in the capacity of Power of Attorney for the primary borrower (Mother) to make a poor financial decision.

Completing the reverse mortgage transaction. Making it virtually impossible to satisfy the due and payable cause of the mortgage, payable at the time of the primary borrower's death.

The Plaintiff must express to the court in the strongest fashion possible. *The Plaintiff would not have completed the transaction if, the Plaintiff was made aware that the mortgage*

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **40** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Case 4:17-cv-00509-ODS     Document 4     Filed 06/26/17     Page 40 of 46

*would be due and payable within 30 days after the death of the primary borrower, or that the letter of intent would have to include a preapproval of a mortgage, in order to avoid any foreclosure proceedings.*

Unfortunately, some reverse mortgage lenders are accused of unethical tactics, including misleading seniors about the risks associated with a reverse mortgage so they experience a reverse mortgage default and their home is foreclosed.

**PRAYER FOR RELIEF**

Plaintiff therefore seeks a declaration that the title to the subject property is vested in plaintiff alone and that the defendants NATIONSTAR MORTGAGE d/b/a CHAMPION MORTGAGE herein, be declared to have no estate, right, title or interest in the subject property and that said defendant NATIONSTAR MORTGAGE d/b/a CHAMPION MORTGAGE be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.

**WHEREFORE**, plaintiff Larry D Wills pray for judgement against the defendants;

1.    For an order compelling said Defendants, to acknowledge legal title and possession of the subject property to Plaintiff herein;

2.    For a declaration and determination that Plaintiff is the rightful holder of title to the property and that Defendant herein, be declared to have no estate, right, title or interest in said property;

3.    That the court issue an Order Quieting Title in favor of the Plaintiff herein, and/or declaring Null and Void the Deed of Trust and Promissory Notes, on the Property involved herein;

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

4.  That the original Promissory Note be returned to the Plaintiff in court for inspection and review of signatures and to verify the representations made herein:

5.  That the Defendant Mortgage Broker JAMES B NUTTER & COMPANY be ordered to pay damages in the amount of $35,000.00 for Breach of Fiduciary Trust and the violation of (MMPA) Missouri Merchandising Practices Act.

6.  That under election of remedies for compensatory damages the Plaintiff be awarded $144,000.00, plus interest.

7.  Punitive damages amounting to approximately $432,000.00 for loss of potential income by the Plaintiff and emotional distress;

8.  That Defendants known and unknown at this time, including Defendant NATIONSTAR MORTGAGE d/b/a CHAMPION MORTGAGE herein, be declared to have no estate, right, title or interest in said Property, and that LARRY D WILLS is entitled to quiet and undisturbed possession of the Property as described above;

9.  That the compensatory damages are to be determined and apportioned amongst the various Defendants, for loss potential income and time spent in legal research and composition of this action comparable to standard Attorney's allowances. from each and every Defendant on all counts.

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

Dated this 30-May-17.

Larry D, Wills; Pro se
3719 College Ave
Kansas City, MO 64128

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI MERCHANDISING PRACTICES ACT
PAGE **43** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

## AFFIDAVIT AND DECLARATION

I, Larry D Wills hereby declare under the penalty of perjury under the laws of the United States and the State of Missouri that on Monday, June 19, 2017, all undersigned statements to be true and correct, and I, Larry D Wills am competent to state the matters set forth herein, that the contents are true, correct, complete, and certain, admissible as evidence, and reasonable and just in accordance with Affiant's best firsthand knowledge and understanding.

Dated this 19-Jun-17.

Larry D, Wills; Pro se
3719 College Ave
Kansas City, MO 64128

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, June 19, 2017, I filed the foregoing document with the Clerk of the United States Court Western District of Missouri. I certify that a true and correct copy of said document was sent to all case participants in the following manner; Electronic and Certified mail to the defendants as listed:

Monday, June 19, 2017

Larry D Wills
3719 College Ave
Kansas City, MO 64128

CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI
MERCHANDISING PRACTICES ACT
PAGE **45** OF **54**

Larry D. Wills
3719 College Ave
Kansas City. MO 64128
Telephone: 816-882-7664

1
2
3    JAMES B. NUTTER & COMPANY
4    4153 Broadway
5    Kansas City Missouri 64111
6
7
8    CHAMPION MORTGAGE REVERSE MORTGAGE
     P.O. Box 40724
9    Lansing MI 48901-7924
10
11
12   CHAMPION MORTGAGE COMPANY INC
     20 Waterview Blvd
13   Parsippany, NJ 07054
14
15   NATIONSTAR MORTGAGE d/b/a CHAMPION MORTGAGE
     PO Box 619098
16   Dallas, TX 75261-9741
17
18
19   NATIONSTAR MORTGAGE HOLDINGS INC
     8950 Cypress Waters Blvd
20   Coppell, TX, 75019
21
22
23   FORTRESS INVESTMENT GROUP LLC
     1345 Ave of the Americas 26,
24   New York, NY 10105
25
26
27   SOUTHLAW
     A Professional Corporation
28   13160 Foster, Suite 100
     Overland Park, KS 66213-2660
29
30
31   CIVIL COMPLAINT SUIT IN EQUITY, WRONGFUL FORECLOSURE, QUIET TITLE, FRAUD, MISSOURI
                           MERCHANDISING PRACTICES ACT
32   PAGE **46** OF **54**

                                                    Larry D. Wills
                                                    3719 College Ave
                                                    Kansas City. MO 64128
                                                    Telephone: 816-882-7664